**Katherine MILTIER, Administratrix, Plaintiff,**

v.

**Charles F. BEORN, M.D., et al., Defendants.**

**Civ. A. No. 88–0395–R.**

United States District Court, E.D. Virginia, Richmond Division.

Oct. 17, 1988.

Susan C. Minkin, Ashcraft & Gerel, Washington, D.C., James M. Hanny, Christopher V. Tisi, for plaintiff.

Frank B. Miller, III, M. Pierce Rucker, II, Eva L. Dillard, Sands, Anderson, Marks & Miller, Richmond, Va., John B. Catlett, Jr., for Leon Dixon, M.D.

Robert S. Brewbaker, Jr., Browder, Russel, Morris & Butcher, Brewster S. Rawls, Richmond, Va., for Reva H. Barker, H.N.T. and Mary Spencer, R.N.

Mary M.H. Priddy, McGuire, Woods, Battle & Boothe, Richmond, Va., for Charles F. Beorn, M.D. and Robert W. Fry, M.D.

## MEMORANDUM AND ORDER

SPENCER, District Judge.

This is an action for violation of civil rights under 42 U.S.C. § 1983 and for wrongful death under Va.Code Ann. § 8.01–50 (1984). The defendants' joint motion to dismiss the state law claim has been argued and is now ripe for decision.

### I

Gwendolyn Miltier was incarcerated at the Virginia Correctional Center for Women (VCCW) in Goochland, Virginia from about January 24, 1985 until her death on June 16, 1986. According to the complaint, Miltier had been undergoing tests for suspected heart problems at the time of her criminal sentencing. The sentencing judge ordered that Miltier's medical records accompany her during her incarceration to enable prison officials to provide her with appropriate medical care. During Miltier's

---

term at VCCW, she and her family persistently requested more intensive medical care than the prison authorities were providing. On June 15, 1986 Miltier complained to the VCCW medical clinic of chest pains, dizziness, and pain in her arm. No cardiac monitoring equipment was available at the clinic. Miltier was advised to return to her room and relax. On the morning of June 16, 1986 Miltier, assisted by two other inmates, returned to the clinic still complaining of severe chest pains and pain in her arm. Miltier lost consciousness outside the clinic door before she received any medical attention. Although an on-site ambulance was available to take inmates to the Medical College of Virginia, the clinic staff decided to keep Miltier in the VCCW clinic. Miltier was not seen by a physician. At about 4:00 p.m. on June 16 Miltier was found dead on the clinic floor beneath her bed. Miltier had suffered a fatal heart attack.

The defendants' motion to dismiss is based on the contention that if Miltier pursues the § 1983 claim in this suit, her wrongful death claim under Va.Code Ann. § 8.01–50 must abate. Because it was enacted in derogation of the common law rule that personal injury actions did not survive the death of the injured party,[1] the defendants urge the Court to view § 8.01–50 narrowly as a matter of legislative grace, rather than broadly as an "arsenal of relief." Thus viewed, a wrongful death action would lie in Virginia only in the absence of any other remedy. Rather than challenging the legal sufficiency of the § 1983 claim, the defendants argue that the Virginia General Assembly did not intend wrongful death claimants to couple their state law claim with a § 1983 claim. Accordingly, the defendants contend that Miltier's wrongful death claim should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

II

The defendants' thoughtful argument squarely presents a question of state law. This question concerns a wrongful death claim that arises out of the same conduct as, and is thus intertwined with, a § 1983 claim. The defendants do not contend that the § 1983 claim is insubstantial or made solely for the purpose of obtaining federal jurisdiction. *Cf. Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Resolution of the state law issue will not enable the Court to avoid the federal question. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2326, 81 L.Ed.2d 186 (1984) (when state statute not fairly subject to interpretation rendering adjudication of the federal question unnecessary, federal court need not abstain). It is therefore proper for this Court to decide the state law issue.

Nothing in the language of Virginia's wrongful death statutes suggests that the state cause of action abates in the presence of a § 1983 action. Section 8.01–50 provides, in pertinent part:

> Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation ... and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action ... and to recover damages in respect thereof, then, and in every such case, the person who ... would have been liable, if death had not ensued, shall be liable to an action for damages ... notwithstanding the death of the person injured....

The mandatory language "shall be liable to an action for damages" seems to impose liability for the full spectrum of damages allowable in a wrongful death action, irrespective of the pendency of a related § 1983 claim. The types of wrongful death damages demanded in the instant suit fit into the categories of damages allowed by Va.Code Ann. § 8.01–52 (1984) (damages recoverable in wrongful death action), and nothing expressed in that statute cancels the operation of § 8.01–50 when a § 1983 claim is asserted.

The defendants cite two other statutes that refer to § 8.01–50 for cases in which the plaintiff's death results from the wrongful conduct alleged, but these stat-

---

**1.** *See, e.g., Wilson v. Whittaker,* 207 Va. 1032, 1035, 154 S.E.2d 124, 127 (1967).

utes do not conflict with the idea that a wrongful death action may coexist with a § 1983 action. The first of these statutes provides, in pertinent part:

> Every cause of action whether legal or equitable, which is recognized in the Commonwealth of Virginia, shall survive either the death of the person against whom the cause of action is or may be asserted, or the death of the person in whose favor the cause of action existed, or the death of both such persons.... Provided, ... that if the cause of action asserted by the decedent in his lifetime was for a personal injury and such decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be amended in accordance with the provisions of § 8.01–56....

Va.Code Ann. § 8.01–25 (1984). The sweeping language of the opening sentence of this provision manifests an intent to preserve a right of recovery after the death of either or both of the parties in interest. The subsequent limiting language has the effect of confining wrongful death relief to that allowable under the wrongful death statutes, but nothing indicates that this relief abruptly becomes unallowble upon the assertion of a § 1983 claim.

> [W]hen a person who has brought an action for personal injury dies pending the action, such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under § 8.01–50, and the case proceeded with as if the action had been brought under such section. In such cases, however, there shall be but one recovery for the same injury.

Va.Code Ann. § 8.01–56 (1984). This statute modifies the "every cause of action" language of § 8.01–25 to place all personal injury actions in which death occurred as a result of the injury under the wrongful death rubric. Nothing in this statute suggests that such actions are extinguished by the assertion of a § 1983 claim. The Virginia legislature has not used any language

in its wrongful death legislative scheme that implicitly or explicitly makes an exception for cases in which § 1983 claims are asserted to the general rule preserving recovery of damages.

Turning from specific language to interstatutory structure, the only exception to § 8.01–25's broad rule favoring recovery that relates to permissible causes of action is for personal injury actions in which death resulted from the alleged wrongful conduct. These can only be revived under § 8.01–50; all other causes of action survive the plaintiff's death. Whether death resulted from the wrongful conduct alleged or not, a § 1983 suit falls into the general rule of § 8.01–25, rather than the exception of § 8.01–50, because § 1983 is not essentially a personal injury action. It is true that § 1983 actions are characterized as personal injury actions for statute of limitations purposes. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed. 2d 254 (1985). But to extend this characterization to the very nature of § 1983 would be a case of the tail wagging the dog. *See Strandell v. Jackson County, Ill.,* 648 F.Supp. 126, 133 (S.D.Ill.1986) (limiting *Wilson v. Garcia* to statute of limitations calculations). The structural relationship between § 8.01–25 and § 8.01–50 shows that under Virginia law, a wrongful death claim can peaceably coexist with a § 1983 claim.

Turning from structure to policy, the pertinent decisions show that the legal climate surrounding Virginia's wrongful death and survival statutes is not as harsh as the defendants perceive it to be.

> The Virginia statute providing for recovery for Death by Wrongful Act is not penal or exemplary but remedial. *Wilson v. Whittaker,* 207 Va. 1032, 1038, 154 S.E.2d 124, 128[–29] (1967). Being remedial, the statute is construed broadly. *Nelson v. Chesapeake & O.R. Co.,* 88 Va. 971, 14 S.E. 838 (1892).

*Hewitt v. Firestone Tire & Rubber Co.,* 490 F.Supp. 1358, 1366 (E.D.Va.1980). The only limit imposed on the amount of wrongful death damages is what "may seem fair and just." Va.Code Ann. § 8.01–52. The

terms "fair" and "just" in this statute are to be given a broad and liberal construction. *Sawyer v. United States*, 465 F.Supp. 282, 292 (E.D.Va.1978) (citing *Pugh v. Yearout*, 212 Va. 591, 595, 186 S.E.2d 58, 61 (1972); *Eisenhower v. Jeter*, 205 Va. 159, 164, 135 S.E.2d 786, 789 (1964)). While Virginia's wrongful death statutes may not be an "arsenal of relief," they hardly seem so narrow that the right of action they provide must self-destruct if a § 1983 claim is asserted.

The defendants' contention, if accepted, could lead to at least one very troublesome result. Virginia's wrongful death remedies benefit the decedent's spouse and certain near relatives specified by statute. Va. Code Ann. § 8.01–53 (1984). Virginia makes a careful distinction between this specific class of statutory beneficiaries and the general beneficiaries of the decedent's estate. *Wilson v. Whittaker*, 207 Va. at 1036, 154 S.E.2d at 128. Situations in which a survivor might be a beneficiary under § 8.01–53 but not a beneficiary of decedent's estate are easily conceivable. If a meritorious wrongful death action could be extinguished by the simultaneous assertion of a § 1983 action, the § 8.01–53 beneficiary might recover nothing while another individual—one completely outside the ambit of § 8.01–53—shared in the § 1983 damages. Such a result would be sharply at odds with the compensatory purposes of the wrongful death statutes.

For the above reasons, this Court holds that a claim under Va.Code § 8.01–50 is not extinguished by the simultaneous assertion of a claim under 42 U.S.C. § 1983. To hold the opposite would call the constitutionality of the state statute into doubt, for Virginia would in effect be taking a state law right away from all claimants who elected to pursue their federal remedies under § 1983. "There are rights of a constitutional stature whose exercise a State may not condition by the exaction of a price." *Garrity v. State of New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). No constitutional inquiry is necessary in this case, because Virginia's survival and wrongful death statutes do not reveal the antagonism toward federal civil rights claims that the defendants have described.

## III

For the reasons stated above, the defendants' motion to dismiss is hereby DENIED.

And it is SO ORDERED.